IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 3, 2007 Session

**STATE OF TENNESSEE v. LAURA JUNE MAYS**

**Appeal from the Circuit Court for Hardeman County**
**No. 6698B    J. Weber McCraw, Judge**

---

**No. W2007-00319-CCA-R3-CD  - Filed April 8, 2008**

---

As a result of stealing funds from her employer, in 2002, Appellant, Laura June Mays, was convicted by a Hardeman County jury of theft of property between $10,000 and $60,000. Upon her conviction, the trial court placed Appellant on probation with a requirement that she and her co-defendant make restitution in the amount of $42,000. On January 5, 2006, Appellant's probation was extended. Appellant failed to make payments pursuant to the January 5, 2006 order. On October 31, 2006, a probation violation warrant was filed. Following a hearing, the trial court revoked Appellant's probation for failure to pay restitution. On appeal, Appellant argues that the trial court erred in revoking her probation without taking into account her ability to pay. We reverse and remand the trial court's decision because the evidence preponderates against the trial court's findings that Appellant has willfully refused to pay her restitution or make a bona fide attempt to obtain the means to pay her restitution.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Wayne T. DeWees, Bolivar, Tennessee, for the appellant, Laura June Mays.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilbur, Assistant Attorney General; Elizabeth Rice, District Attorney General, and Joe Van Dyke, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On October 3, 2002, Appellant was convicted of theft of property between $10,000 and $60,000. The trial court sentenced Appellant to three years. The sentence was suspended in its

entirety, and Appellant was placed on probation. As part of her probation, the trial court ordered Appellant to make restitution of $42,000 jointly with her co-defendant.

On January 5, 2006, Appellant's probation was extended for two years. The trial court ordered Appellant to pay $500 each month for the first six months and then $1,500 for each month thereafter. The trial court also ordered Appellant to meet the other terms of her probation.

On October 31, 2006, a probation violation warrant was filed. The warrant alleged that Appellant owed $205 in probation arrearage fees and that Appellant had failed to make monthly payments toward restitution. According to the warrant, Appellant owed $30,120 toward restitution and had paid $1,440 at that time.

On January 25, 2007, the trial court held a hearing on the probation revocation. Pakita Hall, Appellant's probation officer, testified that she inherited Appellant's case in 2006. Ms. Hall filed a probation violation warrant based on a technical violation, which was Appellant's failure to make restitution. Appellant had not violated any other provisions of her probation. Ms. Hall stated that in the original judgment, the trial court did not set a monthly payment amount. Appellant had been paying about $50 a month until January 5, 2006, when the trial court extended Appellant's probation by two years and set monthly payment amounts at $500 a month for the first six months and $1,500 a month for the remaining period of probation. At the time Ms. Hall testified at the probation revocation hearing, Appellant was more than $5,000 behind on her payments.

Appellant also testified at the hearing. She stated that at the time of the hearing she was living in a rental house rent free in exchange for making repairs to the house. She stated that she had lost her home that she had owned through the ordeal with her conviction. Appellant also stated that she is married, but they are no longer together. Therefore, she gets no support from her husband. At the hearing, she also testified that her son lived with her in the rent-free home. He is also unemployed. At the time of the hearing, Appellant owned a 1992 Ford Tempo that her mother-in-law had purchased for her. Appellant and her son go out to look for work together because he does not own a car.

At the time of the hearing, she was unemployed and had not had a job since August of 2006. Her income at the time of the hearing was $169 a week in unemployment benefits. Appellant testified that between 2002 and 2006 she made anywhere from $9,305 to $14,206 a year. Appellant testified as to her monthly expenses. She stated that in December of 2006, she paid $100 towards restitution and $100 on her bond to the bondsman. Appellant also paid an electric bill, telephone bill and purchased groceries. She testified that one month she paid $150 for her electric bill, a $55 telephone bill, $100 for restitution, and $100 on the loan from her bond. Appellant testified that she could not afford to pay more than $100 toward restitution. To obtain her bond when the violation warrant was entered in November, Appellant borrowed most of the money and used one week's unemployment check.

Appellant stated that when she was first put on probation she paid $50 a month in restitution. The trial court's order at that time did not specify a monthly amount for her to pay. After she was revoked and the trial court extended her probation she paid about $100 a month in restitution. She stated that she is unable to pay $500 a month in restitution. She also testified to a sporadic work history. She worked at a retail establishment at $5.50 an hour and a hair product factory at $6.80 to $9.00 an hour. She was fired from the hair product factory due to an altercation with another employee. She stated that she has been unable to find a new job because of her criminal background. Appellant testified that the business owner from whom she stole offered Appellant her job back. Appellant went back to work, but she left because she did not trust herself to work there.

The trial court ordered that Appellant's probation be revoked based upon her failure to pay restitution. The trial court's order stated the following:

1. That the Defendant had the ability to pay greater restitution than she has paid through the Clerk's office to date.
2. That the Defendant's failure to pay a significant amount toward this restitution was willful on her part.
3. That Defendant has had good employment during the time of her probation that would have allowed her to make significant payments toward her restitution, but lost that employment due to her misconduct.
4. That Defendant has had good employment offers during the time of her probation, but turned them down due to her fear of working around money. There was no testimony, however, that Defendant sought help with any psychological problem that she may have in this area.
5. That Defendant has not made a good faith effort to compensate the victim in this matter.
6. That the initial judgment in this matter clearly makes the Defendant's probation conditional on her payment of restitution.

Appellant filed a timely notice of appeal.

## ANALYSIS

On appeal, Appellant argues that the trial court erred in revoking her probation because the restitution exceeded her earning ability. A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. T.C.A. §§ 40-35-310, -311; *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). After finding a violation of probation and determining that probation should be revoked, a trial judge can: (1) order the defendant to serve the sentence in incarceration; (2) cause execution of the judgment as it was originally entered, or, in other words, begin the probationary sentence anew; or (3) extend the probationary period for up to two years. *See* T.C.A. §§

40-35-308(c) & -311(e); *State v. Hunter*, 1 S.W.3d 643, 647-48 (Tenn. 1999). The decision to revoke probation rests within the sound discretion of the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation or a community corrections sentence is subject to an abuse of discretion standard of review, rather than a de novo standard. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). An abuse of discretion is shown if the record is devoid of substantial evidence to support the conclusion that a violation of probation has occurred. *Id.* The evidence at the revocation hearing need only show that the trial court exercised a conscientious and intelligent judgment in making its decision. *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

Tennessee Code Annotated section 40-35-304 sets out the procedures the trial court must follow in ordering restitution. The trial court "may direct a defendant to make restitution to the victim of the offense as a condition of probation." T.C.A. § 40-35-304(a). "Whenever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court shall order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss." T.C.A. § 40-35-304(b). The amount of restitution that the defendant may be directed to pay is limited to "the victim's pecuniary loss." *See* T.C.A. § 40-35-304(b). The phrase "pecuniary loss" includes:

> (1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and
> (2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

T.C.A. § 40-35-304(e). There is no designated formula or method for the computation of restitution but the trial court is required to consider "the financial resources and future ability of the defendant to pay or perform." Tenn. Code Ann. § 40-35-304(d). "[T]he amount of restitution a defendant is ordered to pay must be based upon the victim's pecuniary loss and the financial condition and obligations of the defendant; and the amount ordered to be paid does not have to equal or mirror the victim's precise pecuniary loss." *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994).

Before a trial court may revoke a defendant's probation for failure to make restitution, the trial court must determine the underlying reasons why the defendant did not pay. *State v. Dye*, 715 S.W.2d 36, 40 (Tenn. 1986) (citing *Bearden v. Georgia*, 461 U.S. 660, 668 (1983)). In *Dye*, our supreme court held that a trial court must make specific findings when revoking a defendant's probation due to failure to pay restitution as a condition of probation. *Id.* If the trial court finds that the "defendant ha[s] neglected or willfully refused to pay," including making bona fide efforts to obtain the means to pay restitution, then probation may be revoked. *Id.* at 41 (citing *Bearden*, 461 U.S. at 674). However, if the defendant does not have the ability to make restitution payments and

makes no effort to obtain the means to pay, the trial court must find that "alternatives to imprisonment were inadequate to meet the State's interests in punishing the offender." *Id.* If these findings are not made by the trial court, the defendant must be allowed to remain on probation. *Id.* at 41.

As quoted above, the trial court made specific findings that Appellant had the ability to pay restitution and both willfully failed to pay her restitution and failed to make a bona fide effort to obtain the means to pay her restitution. However, we feel that the evidence preponderates against the trial court's conclusion that Appellant neglected or willfully refused to pay her restitution. The lower court in extending Appellant's probation set the monthly restitution payments at $500 for six months and $1,500 per month for the balance of the probation period. This appears to us to be excessive given Appellant's income and necessary living expenses. Moreover, Appellant's co-defendant was also ordered to pay toward the $42,000 restitution amount. There is nothing in this record to indicate how much that individual has paid thereby lessening Appellant's total debt. As stated above, Appellant was currently unemployed but was actively seeking employment. Even though Appellant's income was about $169 a week from unemployment, she was still making an effort to pay $100 a month toward restitution. Contrary to the trial court's findings that Appellant was willfully refusing to pay, Appellant was in actuality paying as much as she reasonably could based on her income at the time. The trial court also found that Appellant turned down employment which would enable her to pay more toward restitution. Appellant testified that she left this job because she did not trust herself working around money. The trial court concluded that this was not making a bona fide effort to obtain employment to pay restitution. However, we view the fact that Appellant left this job as evidence that her punishment for theft has been somewhat effective. Appellant has of her own volition removed herself from temptation even when faced with the possibility of serving the remainder of her sentence in incarceration. Therefore, under the principles announced in *Dye*, we conclude that the trial court should not have ordered the revocation of Appellant's probation without making a realistic assessment of Appellant's ability to pay given her circumstances on remand. Therefore, the trial court's revocation of Appellant's probation is reversed.

The record shows that Appellant is unable to pay $500 a month, much less the $1,500 a month later required. We remand this case for the trial court to make appropriate findings with regard to Appellant's ability to pay restitution and set an amount that Appellant reasonably can afford to pay. All parties may refer to Tennessee Code Annotated section 40-35-304(f) which sets forth the procedure to be followed when modifying a defendant's restitution. We also point out as stated above that the total amount of restitution does not have to equal the victim's pecuniary loss. *See Smith*, 898 S.W.2d at 747.

### CONCLUSION

For the foregoing reasons, we reverse and remand the trial court's decision.

_____
JERRY L. SMITH, JUDGE